**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Denise M.,[1]

Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

Defendant.

Case No. 25-cv-3202 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Denise M. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") December 17, 2024 decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("2024 Decision" or "Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Plaintiff argues the Decision was erroneous because the Administrative Law Judge ("ALJ") failed to properly consider a medical expert's testimony and did not appropriately weigh Plaintiff's subjective reports of her symptoms. Because substantial evidence supports the Decision, the Court denies Plaintiff's request for relief (ECF No. 12), grants Defendant's request for relief (ECF No. 17), and dismisses this matter with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

## BACKGROUND

### I. Plaintiff's Claim

Plaintiff applied for DIB on September 12, 2016. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 176-177.)[2] At that time she was a 54-year-old woman. (R. 176.) She had previously worked as a packer/mover, electronics salesperson, delivery driver, and day porter. (R. 212.) Plaintiff alleged a disability onset date of April 1, 2016 (R. 176) resulting from bladder cancer, major depression, anxiety, degenerative disc disease, arthritis, and "koiphois" [sic][3]. (R. 211.)

### II. Regulatory Background

An individual is considered disabled for purposes of DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine

[2] The Social Security administrative (R.) is filed at ECF No. 7. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

[3] Plaintiff likely meant "kyphosis". (*See* R. 381, noting that in 2014 she was diagnosed with "mild kyphosis of the thoracic spine".)

whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Procedural History

### A. The 2016 and 2020 Decisions

Plaintiff's application was denied initially (R. 86-87), and on reconsideration (R. 102-103). Plaintiff requested a hearing with an ALJ (R. 116-117), and the ALJ issued a decision on August 29, 2018 ("2016 Decision") (R. 15-26) that denied Plaintiff's claim and found her "not disabled"

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

from her alleged disability onset date through the date of the decision (R. 25-26).

Plaintiff appealed the 2016 Decision to the Appeals Council on October 8, 2018. (R. 173-174.) The Appeals Council denied further review on June 11, 2019, such that the 2016 Decision became the Commissioner's final decision as of that date. (R. 1-6.)

After the Commissioner denied Plaintiff's DIB application, Plaintiff filed suit in the U.S. District Court for the Northern District of Illinois. *Denise M. v. O'Malley*, No. 19-cv-5239 (HKM), (N. D. Ill. Aug. 2, 2019). Before the Court could address Plaintiff's claim on the merits, Defendant filed an agreed motion to remand the case to the Commissioner for further administrative action pursuant to sentence 4 of 42 U.S.C. § 405(g). *Id*. (ECF No. 28). The District Judge granted the motion and filed a remand order on May 27, 2020. *Id*. (ECF No. 31).

On remand, the ALJ issued another decision ("2020 Decision") denying Plaintiff's claim, determining that she is capable of performing "medium work," and finding her "not disabled". (R. 682-699.) Plaintiff appealed the 2020 Decision, and on May 16, 2024, the Appeals Council again remanded Plaintiff's claim to the ALJ. The Appeals Council explained that the 2020 Decision failed to provide an adequate evaluation of Plaintiff's RFC because it did not "describe how the evidence supports the conclusion that [Plaintiff] retains the ability to perform a range of work at the medium exertional level." (R. 674-676.) Based on updated earnings records showing a date last insured of June 30, 2020, the Appeals Council further directed the ALJ to adjudicate Plaintiff's application through that date. (*Id.*)

**B. The 2024 Decision**

On November 14, 2024, pursuant to the second remand, the ALJ held another hearing on Plaintiff's application. (R. 706-743.) An attorney represented Plaintiff, and Plaintiff, a vocational expert, and medical expert Dr. Steven Golub testified. (*Id.*) After the hearing, the ALJ considered

whether Plaintiff was disabled from April 1, 2016, Plaintiff's alleged disability onset date, through June 30, 2020, Plaintiff's date last insured, and issued the 2024 Decision on December 17, 2024. (R. 632-663.)

At step one of the Decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period of her alleged onset through her date last insured. (R. 638.) At step two, the ALJ determined that Plaintiff had multiple non-severe impairments, including a history of bladder cancer without relapse, benign thyroid nodule, chronic obstructive pulmonary disease (COPD), gastroesophageal reflux disease (GERD), vitamin D deficiency, mild degenerative joint disease of the sacroiliac joints and hips, hypertension, a likely history of cerebrovascular accident, and a past history of alcohol and drug abuse. (R. 639-641.) The ALJ further determined that Plaintiff had multiple physical and mental impairments, which at least in combination were severe, including: major depressive disorder, borderline personality disorder, lumbar spinal degenerative disc disease and cervical spinal degenerative disc disease. (R. 639.) At step three, the ALJ further addressed the severity of Plaintiff's impairments and concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal any impairment in the Listing. (R. 641-646.)

At step four of the sequential analysis, the ALJ catalogued the mental and physical health evidence in the record from the 2024 hearing as well as the prior administrative proceedings, including Plaintiff's testimony, Dr. Golub's testimony, the opinions of the state agency medical experts, and Plaintiff's medical record, including Plaintiff's subjective reports, medical and mental health tests, medical imaging, treatment history and clinical findings. (R. 646-661.) Based on this evidence, the ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) except limited to simple, routine and repetitive tasks that are not performed at a fast production rate pace, such as that found in assembly-line work; occasional interactions with co-workers, supervisors, and the public, where the job primarily involves taking instructions from supervisors and performing tasks consistent with those instructions; and occasional changes in work tasks with end of day or hourly production requirements rather than minute-by-minute work quotas.

(R. 646.) Continuing with step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (R. 661-662.)

At step five, the ALJ evaluated whether Plaintiff could perform any job that exists in significant numbers in the national economy. (R. 662-663.) Based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was able to perform other jobs, including: "machine packager" (DOT #920.685-078, an unskilled (SVP-2) job at a medium exertional level, with approximately 83,800 jobs in the national economy); "hospital cleaner" (DOT #323.687-010, an unskilled (SVP-2) job at a medium exertional level, with approximately 37,200 jobs in the national economy); and "counter attendant" (DOT #319.677-014, an unskilled (SVP-2) job at a medium exertional level, with approximately 45,700 jobs in the national economy). (R. 663.) The ALJ concluded on that basis that Plaintiff was not disabled during the relevant period. (R. 663.) The Appeals Council denied Plaintiff's request for review of the ALJ's Decision (R. 625-631), and this lawsuit followed.

## DISCUSSION

### I. Standard of Review

The Court's review is limited to determining whether the ALJ's Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding the ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II. Analysis

Plaintiff contends the Decision should be remanded because the ALJ erred in assessing her RFC in three ways: (1.) the ALJ failed to properly evaluate the opinion of the testifying medical expert, Dr. Steven Golub; (2.) the ALJ failed to provide adequate support for his conclusion that Plaintiff could perform medium work; and (3.) the ALJ failed to assess whether Plaintiff's

activities of daily living were consistent with her reported pain. The Court finds none of these arguments warrant another remand.

### A. Evaluation of Medical Expert Opinion

In reviewing an ALJ's evaluation of medical opinions, a court is limited to considering whether the ALJ complied with Social Security Administration regulations prescribing how such an evaluation must be conducted. *See Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025). Because Plaintiff filed her claim prior to March 27, 2017, the Court looks to 20 C.F.R. § 404.1527(c) for the applicable analytical framework. Under 20 C.F.R. § 404.1527(c), the ALJ should consider several factors, including: (1.) whether the medical source has examined the claimant; (2.) the nature and extent of any treatment relationship; (3.) the degree to which evidence in the record supports the source's opinion; (4.) whether the opinion is consistent with the record as a whole; (5.) whether the opinion relates to the source's area of specialization; and (6.) other factors supporting or contradicting the opinion, including, e.g., the source's understanding of disability programs and familiarity with the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Regardless of the weight an ALJ assigns an opinion, he "must give good reasons for doing so." *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018). "Good reasons" for lesser weight include internal inconsistency and other physicians' opinions offering better medical evidentiary support. *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

The ALJ's RFC assessment limits Plaintiff to medium exertional work. Plaintiff contends this conclusion impermissibly discounts Dr. Golub's testimony at the November 14, 2024 hearing that she could not perform medium exertional work for "eight hours a day, five days a week." (R. 729.) In response to questioning by the ALJ, Dr. Golub testified that he had never treated Plaintiff but had reviewed her medical records. (R. 718.) Based on that review, he provided a summary of

her conditions, including obesity, bladder tumor, pulmonary and thyroid nodules, and ischemic cerebrovascular accident. (R. 719.) Dr. Golub concluded that "there was no significant support objectively for any severe impairment that might be causing her discomfort." (R. 720.) Dr. Golub further stated that Plaintiff's impairments did not warrant any restrictions because "there was no support objectively for any significant underlying issue." (R. 721.)

On cross-examination, Plaintiff's attorney asked Dr. Golub to address Plaintiff's degenerative disc disease. (R. 725.) Dr. Golub responded that, given Plaintiff's age and weight, her degenerative disc disease would not necessarily translate into a functional limitation. (R. 725.) Plaintiff's attorney pushed Dr. Golub on his assessment of a medium work limitation, particularly in light of Plaintiff's complaints of pain, to which Dr. Golub responded that "[a] description of pain is not a reliable barometer because it's subjective". (R. 728.) However, upon considering Plaintiff's complaints of pain, her age, and her weight, Dr. Golub agreed that he did not think she would be "capable of working at a job requiring [her] to be on [her] feet 6 to 8 hours a day, lifting 50 pounds for 40 hours a week". (R. 728.) Dr. Golub continued that "someone with these impairments may miss some time if they're – if they move the wrong way and they injured the musculature in a certain area." (*Id.*) The ALJ then questioned Dr. Golub regarding the inconsistency in his testimony. (R. 729.) In response, Dr. Golub stated that "I think you have to be a bit liberal because someone that age, that body habitus, with these – all these musculoskeletal issues, I think it's reasonable to say that a medium level would be a bit – a bit out of the realm, as far as my experience tells me", but that "the objective reporting test wise and so on could not substantiate certain subjective complaints." (R. 730.)

The ALJ's Decision assigned Dr. Golub's opinion only "partial weight". (R. 657.) In reaching this finding, the ALJ appropriately followed the guidance of 20 C.F.R. § 404.1527(c). In

particular, the ALJ noted that Dr. Golub's testimony was internally inconsistent and contradicted by other evidence. The ALJ explained that Dr. Golub's initial conclusions, in response to the ALJ's questioning, were "well-supported by his analysis of the objective medical evidence, and consistent with the overall record." (*Id.*) The ALJ continued that Dr. Golub subsequently, "changed portions of his opinion upon questioning by the claimant's representative, and he clearly indicated that the changes to those later portions were based on consideration of factors other than the medical evidence of record or other appropriate evidence in the record." (R. 657.) Specifically, the ALJ noted that, "[i]n the portions of his testimony where the medical expert appeared to change his conclusion that there were no limitations, he made it clear he did so based on considerations, including body habitus (obesity), age, and pain, none of which are appropriate considerations according to SSR 96-8p". (R. 658.) The ALJ quoted SSR 96-8p, which directs that, "[a]ge and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms***, due to such factors as age and natural body build***, and the activities the individual was accustomed to doing in his or her previous work." (R. 659, emphasis in the Decision.)

The ALJ was justified in discounting Dr. Golub's medical testimony based on its internal inconsistency. *See Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) ("Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent[.]'" (quoting *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996))); *Kuikka v. Berryhill*, No. 17-cv-374 (HB), 2018 WL 1342482, at *9 (D. Minn. Mar. 15, 2018) ("However, when a treating professional 'renders inconsistent opinions that undermine the

credibility of such opinions,' an ALJ may discount or even disregard the opinion entirely." (quoting *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000))).

Furthermore, the ALJ thoroughly explained his rationale for rejecting Dr. Golub's conclusion that Plaintiff could not perform medium exertional work: Dr. Golub's conclusion inappropriately relied on Plaintiff's age and body habitus, which agency policy expressly precludes an ALJ from considering during the RFC assessment at step four of the sequential analysis. *See* SSR 96-8p. Plaintiff contends the ALJ mischaracterized Dr. Golub's testimony. (ECF No. 12 at 10.) She asserts that Dr. Golub did not rely on her age and weight as independent factors precluding her from medium work; rather, he merely explained that "degenerative changes like those seen on the MRIs of her lumbar spine and cervical spine were 'not unusual' in individuals of her age that are overweight." (*Id*., citing testimony at R. 726.) But Plaintiff's citation to Dr. Golub's testimony overlooks his clarification that even though such degenerative changes were reflected in her MRI, "it doesn't necessarily translate into functional limitations." (R. 726, noting that Plaintiff's bilateral EMGs and nerve conduction tests were "completely normal".) Moreover, insofar as Dr. Golub's testimony is subject to multiple reasonable interpretations, the Court must defer to the interpretation that the ALJ adopted. *Perks*, 687 F.3d at 1091. Upon closely reviewing the transcript of Dr. Golub's testimony, the Court finds the ALJ's interpretation—that Dr. Golub's sudden reversal was largely based on Plaintiff's age and body habitus[5]—was within the available "zone of choice". *See Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) ("We will only disturb

---

[5] Plaintiff further challenges the ALJ's evaluation of Dr. Golub's testimony on the ground that obesity—as opposed to body habitus—is a valid consideration in determining RFC. (*See* ECF No. 12 at 10.) However, the ALJ appropriately considered Plaintiff's "quite mild obesity" in assessing Dr. Golub's opinion. (*See* R. 658, "[T]he record does not show ongoing findings or complaints to support associated functional limitations over any 12-month period related to the obesity.".)

the ALJ's decision if it falls outside the available zone of choice.") (quotation omitted). For these reasons, the Court concludes the ALJ's evaluation of Dr. Golub's testimony was appropriately justified and does not warrant reversal.

**B. Support for Medium Work Limitation**

Plaintiff further contends that—irrespective of whether the ALJ erred in assessing Dr. Golub's opinion—he failed to comply with SSR 96-8p because he did not provide an adequate "narrative discussion describing how the evidence supports his conclusions". (ECF No. 12 at 10.) Upon careful review of the record, the Court finds that: (1) the ALJ established an appropriate logical bridge between the relevant evidence and his determination of Plaintiff's RFC; and (2) substantial evidence supports his findings.

Plaintiff argues the ALJ failed to adequately support his RFC assessment because it was not supported by any medical opinions. This is a mischaracterization of the record. For the reasons previously discussed, the ALJ's assessment of Dr. Golub's opinion was justified. This includes Dr. Golub's initial determination, which the ALJ found persuasive, that no restrictions were supported by her impairments because "there was no support objectively for any significant underlying issue." (R. 721.) Moreover, the findings of the state agency medical consultants support the ALJ's determination that she is capable of performing medium work. (*See* R. 84, concluding that Plaintiff was able to perform her past relevant work and that such work included jobs at the "heavy" and "medium" levels of exertion; R. 78, deeming Plaintiff's physical impairments "non-severe" and finding that they "would not affect her work-related activities"; R. 93, 99, affirming initial assessments on reconsideration.)

The ALJ assigned only partial weight to the state agency medical consultants' opinions, instead finding that Plaintiff is only capable of performing medium (vs. heavy) work, and that her

lumbar degenerative disc disease and cervical degenerative disc disease were severe (vs. non-severe) impairments. (ECF No. 659.) The ALJ thus found Plaintiff to be *more* restricted than the state agency consultants found her to be. In reaching this determination, the ALJ noted that they had not examined or treated Plaintiff, and that additional evidence had been received since their review of the record. However, the state agency medical consultants' opinions plainly bolster the ALJ's finding that Plaintiff can perform work at a medium exertional level and undermine Plaintiff's position.

Insofar as Plaintiff is arguing that the consultants' opinions must be discounted entirely because they were not based on all available medical evidence (namely, a 2019 CT scan of her cervical spine or the 2020 MRI of her lumbar spine), Plaintiff still fails to advance a viable challenge. An ALJ's RFC assessment does not need to be supported by *any* medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). And crucially, the ALJ otherwise extensively justified his finding that Plaintiff could perform medium work.

Plaintiff claims the ALJ failed to appropriately document his rationale for this finding because it was limited to a single, brief paragraph in his RFC analysis. (ECF No. 12 at 11.) But this interpretation overlooks the totality of the ALJ's Decision. The ALJ justified his findings throughout his step four analysis, including his comprehensive discussion of Plaintiff's testimony (R. 647-649), her medical records (649-651, 657), and Dr. Golub's and the state agency medical experts' findings (R. 657-660). The ALJ summarized this thorough review:

> Nonetheless, the limited and conservative course of treatment and limited clinical findings, as well as the mild lumbar spinal degenerative disc disease shown in imaging, and the lack of evidence of nerve root involvement at any spinal level, all do not support greater limits physically. Most notably, the claimant testified that the primary thing preventing her from working was muscle spasms. However, the claimant reported to her primary care provider that she took over-the-counter

> analgesics as needed to manage the muscle spasms in her neck, shoulders, and body, and occasional headaches, which she mentioned only rarely in reviews of systems (Ex. 11F, at 7, 13). She denied chest pain or pressure, shortness of breath, abdominal pain, edema, or problems with bowel or bladder function (Id.). In April 2018, she denied headaches, weakness, and paresthesias when seen for acute chest pain (Ex. 18F, at 35). She had a headache with the likely CVA in January 2020, but noted it did not seem to be like a migraine (Ex. 19F, at 27). She did not report other recent headaches, or the muscle spasms. There was imaging showing signs of muscle spasm on December 2, 2019 (Ex. 19F, at 19). Shortly after the date last insured, she had had intact strength in the upper and lower extremities and denied headaches, and shortness of breath in July 2020 (Ex. 17F, at 11). She subsequently reported injuring her ankle while climbing over a gate (Ex. 21F, at 15). The physical examination was otherwise within normal limits.

(R. 659.)

Plaintiff argues there is no logical bridge between the record evidence and Plaintiff's RFC because the ALJ "relied on his own lay understanding of Ms. Martin's cervical and lumbar degenerative disc disease." (ECF No. 12 at 12.) This assertion patently ignores the ALJ's extensive analysis of Plaintiff's conditions throughout the step four analysis, which relied heavily on the objective medical record. Furthermore, Plaintiff provides no justification, other than her reliance on Dr. Golub's internally inconsistent opinion, as to why a higher exertional limitation would be justified.

Plaintiff's argument boils down to a suggestion that the ALJ gave too much weight to the evidence in the medical record over certain portions of Dr. Golub's testimony. But Plaintiff's disagreement with how the ALJ weighed the evidence does not warrant reversal or remand. As the Eighth Circuit has explained, the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young*, 221 F.3d at 1068). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision. *See Chesser*, 858 F.3d at 1164; *Nash v. Comm'r*, 907

F.3d 1086, 1089 (8th Cir. 2018) ("If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). Here, the ALJ properly considered the relevant evidence in the record and explained how he linked that evidence to Plaintiff's RFC. Because substantial evidence supports his RFC determination, Plaintiff's disagreement with the ALJ's decision is not a basis for remand.

**C. Symptom Assessment**

Finally, Plaintiff argues the 2024 Decision is legally erroneous because the ALJ failed to assess whether Plaintiff's daily activities were consistent with her reports of pain. (ECF No. 12 at 13.) She points to SSR 16-3p, which requires an ALJ to consider factors outside the objective medical evidence, including a claimant's daily activities, when assessing her symptoms. *See* SSR 16-3p ("We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.".) Plaintiff further contends the ALJ's failure to consider her reported daily activities in assessing her pain was not harmless, as her ability to carry out those tasks was highly relevant to her ability to carry out the demands of work at the medium exertional level. (ECF No. 12 at 13.)

Congress expressly prohibits granting disability benefits based entirely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."); *see also* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). The Eighth Circuit has held that, when assessing a claimant's subjective allegations, such as allegations of pain or fatigue, "an ALJ must examine: (1) the claimant's daily activities;

(2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Burnside v. Apfel*, 22 F.3d 840, 844 (8th Cir. 2000) (citing factors enunciated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (interpreting requirements of SSR 82-58, the predecessor to SSR 16-3p)). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Though the ALJ must consider these factors, the "ALJ is not required to explicitly discuss each factor individually or in depth." *Nicole W. v. Kijakazi*, No. 20-cv-2697 (SRN/BRT), 2022 WL 3047088, at *5 (D. Minn. July 14, 2022) (citing *Hanson v. Colvin*, No. 20-cv-961 (TNL), 2013 WL 4811067, at *16 (D. Minn. Sept. 9, 2013)), *report and recommendation adopted*, 2022 WL 3045130 (D. Minn. Aug. 2, 2022). However, there must be some indication in the opinion that the ALJ considered most of the *Polaski* factors for a court to hold that the deficiency in opinion writing is not material. *See, e.g.*, *Alia D. v. Kijakazi*, No. 21-cv-366 (MJD/LIB), 2022 WL 3718600, at *16 (D. Minn. July 27, 2022) (affirming decision when ALJ did not specifically identify the *Polaski* factors by name, but it was evident from the record that the ALJ considered several *Polaski* factors), *report and recommendation adopted*, No. 21-cv-366 (MJD/LIB), 2022 WL 3717186 (D. Minn. Aug. 29, 2022). The "ALJ cannot only rely on the lack of objective medical evidence in making his or her conclusion." *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002).

In this case, throughout the course of his analysis, the ALJ considered: Plaintiff's work history (R. 653, noting the claimant had become certified as a Personal Care Assistant and had worked at the Winona County Developmental Achievement Center); her activities of daily living (R. 648, describing Plaintiff "to be independent in activities of daily living and able to walk and

climb stairs up to 5.5 METS"; R. 652, noting Plaintiff's "ongoing relatively high level of functional independence in activities of daily living"; R. 642, noting Plaintiff's report that "she did some cleaning and laundry", "could drive a car and go out alone," and shop in stores twice a month for an hour); her medical diagnoses (R. 651); the severity of her condition (R. 649, describing Plaintiff's "minimal to mild" degenerative disc disease of the lumbar spine, "mild" degenerative joint disease of the sacroiliac joints and hips, normal respiration, no signs of fatigue, drowsiness, sleepiness, or impaired condition, and "mild ongoing physical limitations"); treatment effectiveness (R. 650, noting physical therapy did result in symptom improvement, but that Plaintiff failed to follow through with appointments); precipitating and aggravating factors (R. 651, noting improvement in COPD symptoms following cessation of smoking); and functional restrictions (R. 651, "The above limitation to the medium exertional level has been assessed to address the intermittent problems with muscle spasms and brief periods of acute neck and back pain with related/cervical tension headaches, due to the fact of the imaging findings showing degenerative disc disease of the kind that could produce greater clinical correlations and require greater interventions than the claimant pursued and received."). Because the ALJ addressed these *Polaski* factors and other related factors in his analysis, the Court cannot find a material deficiency in his opinion writing. *Nicole W.*, 2022 WL 3047088, at *5. The Court further concludes that substantial evidence in the record supports the ALJ's analysis of Plaintiff's allegations of pain with respect to his RFC determination. *See, e.g.*, *Schlemmer v. Berryhill*, No. 16-cv-2157 (SER), 2017 WL 4898520, at *4 (D. Minn. Aug. 8, 2017) (finding substantial evidence supported the ALJ's decision based on plaintiff's daily activities, work history, and medication).

For the above-stated reasons, the Court concludes that none of Plaintiff's assignments of error warrant reversal or remand. The Commissioner's Decision is affirmed accordingly.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Request for Relief (ECF No. 12) is **DENIED**;

2. Defendant's Request for Relief (ECF No. 17) is **GRANTED**; and

3. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 31, 2026

*s/ Dulce J. Foster*
DULCE J. FOSTER
United States Magistrate Judge